# IN THE COURT OF APPEALS OF IOWA

No. 25-0435
Filed June 18, 2025

IN THE INTEREST OF C.M., E.M., and C.M.,
Minor Children,

S.W., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Katie Reidy Abel, Tipton, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Sue Kirk of Arnott & Kirk, PLLC, Iowa City, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of a mother and father to their three children—born in 2017, 2019, and 2023. Only the mother appeals. She challenges the statutory grounds authorizing termination, contends the Iowa Department of Health and Human Services failed to make reasonable efforts toward reunification, argues termination is not in the children's best interests, and requests additional time to work toward reunification.[1]

We conduct a de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The juvenile court's factual findings do not bind us, but we give them weight, especially in assessing witness credibility. *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the children's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). But we do not address any step not challenged by the parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). After addressing any challenged steps, we then consider any additional claims raised. *L.A.*, __ N.W.3d at ___, 2025 WL 855764, *1.

---

[1] The mother references her bonds with the children, which could relate to a permissive exception to termination under Iowa Code section 232.116(3)(c) (2024). But because she only discusses those bonds within the context of the children's best interests and the issue heading only references "best interests," we do not interpret her petition on appeal as making a separate request to forgo termination under section 232.116(3)(c). *See In re L.A.*, __ N.W.3d___, ___, 2025 WL 855764, *3 n.2 (Iowa Ct. App. 2025). "To avoid the risk of waiving an issue, if a party intends to advance both a best-interests and permissive-exception argument, the party needs a separate issue heading and argument for each." *Id.* (citing Iowa R. App. P. 6.903(2)(a)(3), (2)(a)(8)).

With respect to the statutory grounds authorizing termination, the juvenile court found grounds satisfied under Iowa Code section 232.116(1)(f) as to the two older children and section 232.116(1)(h) as to the youngest child. These two grounds for termination are similar. Both require the child to be previously adjudicated as in need of assistance and for the court to find the child could not be returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f), (h). They differ only with respect to the age of the child at issue and the length of time the child must be removed from the parent's custody. *Compare id.* § 232.116(1)(f), *with id.* § 232.116(1)(h). Under these statutory grounds, the mother only challenges whether the children could be safely returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4), (h)(4); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

Like many termination-of-parental-rights cases, the mother's methamphetamine use played a central role in the juvenile court's determination that the children could not be safely returned to the mother's custody. The mother contends the juvenile court relied solely on faulty sweat patch test results to conclude the children could not be returned to her. In doing so, she highlights her expert witness's testimony about the reliability of sweat patch testing and her negative urinalysis results. But the State also presented an expert witness who testified as to the reliability of various types of drug testing, opining that, if "properly performed," urine, sweat, and hair testing are "all equally reliable." The State's expert witness explained how the mother could test positive for methamphetamine through sweat patch testing while also testing negative through other types of drug

testing such as hair or urine testing.[2]  We find this explanation sound, as did the juvenile court.

Here, the mother's eleven urinalysis results were negative for illegal substances, but twenty-six of her thirty-four sweat patch tests were positive for methamphetamine.  Given the volume of positive tests, this is not an instance of an outlier false positive.  We agree with the juvenile court's observations that "the positive test was not an exception but the rule" and "[i]t defies logic that all, or even a substantive portion, of the sweat patch tests are false positive tests."  So even though the urine tests came back negative, we still credit the positive sweat patch tests based on the State's expert testimony and the volume of positive tests.  Given that the mother maintains she last used methamphetamine in November 2022, months before the underlying child-in-need-of-assistance case even began, we conclude the mother is not being honest about her substance use.  Her refusal to acknowledge her use is a hindrance to her sobriety.  *See In re A.T.*, No. 25-0119, 2025 WL 1085210, at *4 (Iowa Ct. App. Apr. 9, 2025).  Because a parent's use of methamphetamine in itself creates a danger for children and we believe the mother's methamphetamine use remains unresolved, we agree the children could not be safely returned to her custody.  *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020).

---

[2] The expert explained that the urine testing could only test whether the mother used drugs in recent days, while the sweat patch test would track use over a longer period.  As for hair testing, the threshold amount of drug required to be present in the sample is relatively higher than required for the sweat patch testing to result in a positive test.  Moreover, the expert explained that urine can be diluted through various ways to result in a false negative and hair can be modified to result in a false negative.

To support her claim that statutory grounds for termination were not established, the mother contends the department failed to make reasonable efforts toward reunification. While not a strict substantive requirement for termination, "[t]he State must show reasonable efforts [toward reunification] as part of its ultimate proof that the child[ren] cannot be safely returned to the [custody] of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (first alteration in original). As this implicates the fourth element under section 232.116(1)(f) and (h), we must address the mother's reasonable-efforts argument before reaching a final conclusion on her challenge to the statutory grounds for termination.

The mother raises two complaints. First, she complains that the department did not provide her with court-ordered urine testing, in addition to the sweat-patch testing, from April to July 2024.[3] The mother contends this failure deprived her of the opportunity to demonstrate sobriety. While it is concerning that the department stopped the urine testing for a few months despite an order from the juvenile court to conduct it, the department ultimately resumed such testing for the mother. So the mother still had opportunities to test through both urine and sweat patches. But the mother could not demonstrate any meaningful period of sobriety because her sweat-patch results consistently came back positive for methamphetamine.

Second, the mother complains that the department did not set up visitation in a timely manner. The children were originally placed with their paternal grandparents. During that time, the mother was free to spend as much time with the children as possible, provided the paternal grandparents were around and she

---

[3] We note the record includes urinalysis results from tests completed on April 5, April 19, July 3, July 9, and July 26.

did not stay overnight. She spent significant time at the paternal grandparents' home to help them care for the children. But after the middle child tested positive for methamphetamine via a hair test in June 2024, the children were moved to foster care placement on July 2. It took more than a week to set up supervised visitation for the mother, with the first supervised visit occurring on July 11. She contends that delay thwarted her progress and amounted to the department's failure to make reasonable efforts toward reunification.

We are not persuaded by the mother's argument. It would have been ideal if the department immediately provided supervised visits, but we will not characterize a nine-day delay in setting up visits as a failure to make reasonable efforts. Further, the hurdle preventing reunification is the mother's methamphetamine use, not the parenting abilities she demonstrated at visits. The mother provides no persuasive argument how, if she had received visits during the nine-day gap at issue, the need for removal would have dissipated. *See In re I.T.*, No. 24-1209, 2024 WL 4620509, at *3 (Iowa Ct. App. Oct. 30, 2024) ("Additional services requested by a parent must relate to the ongoing need for removal and remedy that need."). We reject the mother's reasonable-efforts challenges and conclude the State established a statutory ground for termination.

Next, the mother challenges the juvenile court's determination that termination is in the children's best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother contends termination is not in the children's best

interests because they are bonded to her and termination would be traumatic to them. According to her, the juvenile court failed to give proper credit to the bonds she shared with the children and her efforts to remain in a caretaker role. But our focus is on what will best serve the children's interests, not on crediting parents for their efforts. So we consider her bonds with the children to the extent their severance would impact the children's mental and emotional condition and needs. *See L.A.*, __ N.W.3d at ___, 2025 WL 855764, *3.

Even after considering any negative impact of severing the mother's bonds with the children, we conclude termination is in the children's best interests given the mother's unresolved substance use and lingering concerns about the mother's involvement with the father. For example, in June 2024, the department received information that the children and the mother were spending unsupervised weekends with the father despite the mother's understanding that she and the father were not to have unsupervised contact with the children due to their methamphetamine use. Shortly thereafter the middle child tested positive for ingestion and exposure to methamphetamine. This incident persuades us that the mother will not prioritize the children's safety over her own desires. In short, it is not safe for the children to be around the mother, and consideration of the children's safety is our paramount concern when making a best-interests determination. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). Conversely, termination will provide the children with the opportunity to find permanency in a safe and stable home. And the children are currently thriving in their foster home, contributing to the children's guardian ad litem advocating for termination. We find it in the children's best interests to terminate the mother's parental rights.

Finally, the mother requests additional time to work toward reunification. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of granting a parent an additional six months to work toward reunification). However, to grant additional time, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The mother does not point to any anticipated changes to support her request. Instead, she challenges the juvenile court's findings that she had not been honest with respect to her contact with the father and continues to deny her methamphetamine use. The juvenile court already gave the mother additional time to work toward reunification, and she did not use that time to make any meaningful progress. Given her history and inability to identify any anticipated changes, we do not grant the mother additional time to work toward reunification.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**